NON-CONFIDENTIAL

2014-1237

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
_____

THAI PLASTIC BAGS INDUSTRIES CO., LTD.,
MASTER PACKAGING, INC., AND INTEPLAST GROUP, LTD.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee,

and

POLYETHYLENE RETAIL CARRIER BAG COMMITTEE,
HILEX POLY CO., LLC, and SUPERBAG CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States Court of International Trade in consolidated case nos. 11-CV-0408, 11-CV-0409, and 11-CV-416, Chief Judge Donald C. Pogue.

**BRIEF OF DEFENDANTS-APPELLEES, POLYETHYLENE RETAIL CARRIER BAG COMMITTEE, HILEX POLY CO., LLC, AND SUPERBAG CORPORATION**

Joseph W. Dorn
Daniel L. Schneiderman
KING & SPALDING
1700 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
(202) 737-0500

*Counsel for the Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation*

July 1, 2014

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

THAI PLASTIC BAGS V US, 2014-1237

Certificate of Interest

Counsel for Defendants-Appellees, Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation, certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation

2.     The name of the real party in interest  (if the party named in the caption is not the real party in interest) represented by me is:

Same

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

King & Spalding LLP - Joseph W. Dorn, Stephen A. Jones and Daniel L. Schneiderman.

07/01/14                                              */s/ Daniel L. Schneiderman*
Date                                                   Daniel L. Schneiderman

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………..………..ii

STATEMENT OF RELATED CASES ................................................................1

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF THE ISSUES ..........................................................................1

STATEMENT OF THE CASE .............................................................................2

STATEMENT OF THE FACTS ..........................................................................3

SUMMARY OF ARGUMENT ............................................................................6

ARGUMENT .......................................................................................................6

I.　STANDARD OF REVIEW ..........................................................................6

II.　THE DENIAL OF A COST OFFSET FOR "BLUE CORNER
　　REBATES" IS SUPPORTED BY SUBSTANTIAL EVIDENCE
　　AND IS IN ACCORDANCE WITH LAW ....................................................7

　　A.　There Is No Statutory Requirement To Treat BCR Revenues As
　　　　Cost Reductions ....................................................................................7

　　B.　Commerce's Established Practice Is Not To Offset G&A By
　　　　"Other Income" Related To Export-Conditioned Programs ...............11

CONCLUSION ...................................................................................................16

## CONFIDENTIAL MATERIAL OMITTED

The material omitted from brackets on pages 3-5 relates to confidential cost data

submitted by Plaintiff-Appellant Thai Plastic Bags Industries Co., Ltd. in the

underlying administrative review.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Essar Steel Ltd. v. United States*,
    678 F.3d 1268 (Fed. Cir. 2012) ...................................................6

*Ningbo Dafa Chem. Fiber Co. v. United States*,
    580 F.3d 1247 (Fed. Cir. 2009) ...................................................7

*Saha Thai Steel Pipe (Public) Co. v. United States*,
    635 F.3d 1335 (Fed. Cir. 2011) .................................................14

*Thai Plastic Bags Indus. Co. v. United States*,
    904 F. Supp. 2d 1326 (Ct. Int'l Trade 2013) .........................3, 4, 14

*Thai Plastic Bags Indus. Co. v. United States*,
    949 F. Supp. 2d 1298 (Ct. Int'l Trade 2013) ................................3

*Thai Plastic Bags Indus. Co. v. United States*,
    746 F.3d 1358 (Fed. Cir. 2014) ..................................................2

*U.S. Steel Group v. United States*,
    973 F. Supp. 1076 (Ct. Int'l Trade 1997) ...................................12

*U.S. Steel Group v. United States*,
    998 F. Supp. 1151 (Ct. Int'l Trade 1998) .........................11, 12, 14

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) .........................................................6

19 U.S.C. § 1677a(c)(1)(B) ...............................................8, 9, 11, 15

19 U.S.C. § 1677b(b) .....................................................................11

19 U.S.C. § 1677b(b)(1) ................................................................14

19 U.S.C. § 1677b(b)(3) ..........................................................11, 12

28 U.S.C. § 1295(a)(5) ....................................................................1

**Agency Determinations**

*Canned Pineapple Fruit From Thailand*,
68 Fed. Reg. 65247 (Dep't of Commerce Nov. 19, 2003) ..................................13

*Certain Frozen and Canned Warmwater Shrimp From Brazil*,
69 Fed. Reg. 76910 (Dep't of Commerce Dec. 23, 2004)..................................13

*Notice of Implementation of Determination Under Section 129 of the
Uruguay Round Agreements Act and Partial Revocation of the
Antidumping Duty Order on Polyethylene Retail Carrier Bags
From Thailand,* 75 Fed. Reg. 48940
(Dep't of Commerce Aug. 12, 2010).....................................................................5

*Oil Country Tubular Goods from Argentina*,
68 Fed. Reg. 13262 (Dep't of Commerce March 19, 2003)...............................13

*Polyethylene Retail Carrier Bags from Thailand*,
76 Fed. Reg. 12700 (Dep't of Commerce March 8, 2011)...................2, 9, 10, 13

*Polyethylene Retail Carrier Bags from Thailand*,
76 Fed. Reg. 30102 (Dep't of Commerce May 24, 2011) .............................8, 12

*Polyethylene Retail Carrier Bags from Thailand*,
76 Fed. Reg. 59999 (Dep't of Commerce Sep. 28, 2011).........................*passim*

## STATEMENT OF RELATED CASES

In accordance with Rule 47.5 of the U.S. Court of Appeals for the Federal Circuit, counsel for Defendants-Appellees, Polyethylene Retail Carrier Bag Committee, Hilex Poly Co., LLC, and Superbag Corporation, states that no other appeal in or from this civil action in the lower court was previously before this or any other appellate court, nor is any case known to counsel to be pending in this or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

## JURISDICTIONAL STATEMENT

This appeal is from a final judgment of the U.S. Court of International Trade ("Trade Court") entered on November 13, 2013. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(5).

## STATEMENT OF THE ISSUES

Whether the Trade Court correctly affirmed the decision by the United States Department of Commerce ("Commerce") not to offset the general and administrative ("G&A") costs reported by respondent Thai Plastic Bags Industries Co., Ltd. ("TPBI") by an amount for the Blue Corner Rebate ("BCR") revenues received by the company. Because Commerce's decision is supported by substantial evidence and is in accordance with law, it was correctly affirmed by the Trade Court.

# STATEMENT OF THE CASE

This case involves the sixth administrative review of the antidumping order

on polyethylene retail carrier bags ("PRCBs") from Thailand, encompassing

entries during the 2009/2010 period of review ("POR"). *Polyethylene Retail*

*Carrier Bags from Thailand*, 76 Fed. Reg. 59999 (Dep't of Commerce Sep. 28,

2011) ("*Final Results*") (JA884-888).

When calculating TPBI's cost of production ("COP") in this sixth

administrative review, Commerce rejected TPBI's argument that its G&A

expenses (an element of COP) should be reduced by the value of BCR revenues

that the company received from the Thai government. *Final Results* Issues &

Decision Memorandum ("*IDM*") at 5 (JA893). This is consistent with

Commerce's treatment of the same revenue item in the immediately preceding fifth

administrative review of TPBI. *See Polyethylene Retail Carrier Bags from*

*Thailand*, 76 Fed. Reg. 12700 (Dep't of Commerce March 8, 2011) ("*Fifth Review*

*Final Results*") at Comment 3. Although TPBI appealed the *Fifth Review Final*

*Results*, which culminated in this Court's decision in *Thai Plastic Bags Indus. Co.*

*v. United States*, 746 F.3d 1358 (Fed. Cir. 2014), TPBI did not challenge

Commerce's treatment of its BCR revenue.

TPBI pursued the BCR revenue issue in its appeal of the instant sixth

review. The Trade Court, however, upheld Commerce's decision not to offset

G&A by the amount of the BCR revenues.  *Thai Plastic Bags Indus. Co. v. United States*, 904 F. Supp. 2d 1326, 1329-31 (Ct. Int'l Trade 2013) ("*TPBI I*") (JA031-035).  After a remand on unrelated issues, the Trade Court issued a final judgment, *Thai Plastic Bags Indus. Co. v. United States*, 949 F. Supp. 2d 1298 (Ct. Int'l Trade 2013) ("*TPBI II*") (JA025), and this appeal ensued.

## STATEMENT OF THE FACTS

When TPBI purchases resin – an input in the manufacture of PRCBs – from certain domestic suppliers, it pays a "compensation fee" to those suppliers "for the import duties they incur to manufacture the resin."  TPBI's Section D Response (Dec. 22, 2010) at D-30 (JA00098).  According to TPBI, "these duties will be rebated to TPBI upon export of the finished bags under the blue corner rebates ('BCR') program…"  *Id*.  The BCR revenues, in other words, represent the return of import duties, conditioned upon exportation of the finished product.  These types of revenues are generally referred to as "duty drawback."

TPBI reported BCR revenues of [             ] Thai Baht ("THB") during 2010.  Cost of Production and Constructed Value Calculation Adjustments Memorandum for TPBI (Sep. 21, 2011) at 1 (JA1418).  Because TPBI had removed this amount from its G&A expenses in the antidumping response, Commerce, in the *Final Results*, added this line item back in.  *Id*.  The adjustment resulted in total G&A expenses for TPBI of [                ] THB and a G&A

expense ratio of [        ] percent.  *Id.* at Attachment 1 (JA1421).  TPBI's dumping

margin in the *Final Results* was 35.71 percent.  (JA887).

In *TPBI I*, the Trade Court remanded for the Department to make an

unrelated adjustment to TPBI's G&A expenses regarding certain gains on asset

sales.  *TPBI I*, 904 F. Supp. 2d at 1331-33 (JA35-39).  On remand, Commerce

disallowed an offset of [            ] THB related to TPBI's gains on the sale of

land and buildings.  Analysis Memorandum for the Draft Results of

Redetermination for TPBI (June 17, 2013) at 3 (JA1643).  This had the effect of

increasing TPBI's total G&A expenses to [            ] THB and its G&A expense

ratio to [      ] percent.  *Id*.  This revision also had the effect of increasing TPBI's

dumping margin from 35.71 percent to 35.79 percent.  *Id*. at 1 (JA1641).

In the current appeal, TPBI does not challenge the disallowance of the

[            ] THB G&A offset for gains on asset sales.  If TPBI were to prevail

with respect to its argument on BCR revenues, therefore, its total G&A expenses

would decrease from [            ] THB to [            ] THB,[1] and its G&A

expense ratio would decline from [      ] percent to [      ] percent.[2]  This would

result in a revised weighted-average dumping margin somewhere between the

---

[1]      [            ] THB – [            ] THB = [            ] THB.

[2]      [            ] THB of G&A expense / [            ] THB cost of
goods sold = [      ] percent.  *See* Analysis Memorandum for the Draft Results of
Redetermination for TPBI (June 17, 2013) at 3 (JA1643).

35.71 percent calculated in the *Final Results* (in which the G&A ratio was [    ]

percent) and the 35.79 percent calculated in the *Redetermination* (in which the

G&A ratio was [    ] percent).

The total value of TPBI's U.S. sales (ranged to within ten percent of actual)

during the POR was $2.2 million.  TPBI's Section A Response (Dec. 9, 2010) at

Exhibit A-1 (public version) (JA953).  Even if TPBI prevails in this appeal, and

even if its margin goes down by the full eight one-hundredths of a percent to 35.71

percent, the company's importers stand to save only about $1,760 in antidumping

duty assessments.[3]

The amount at stake in this litigation, therefore, is miniscule, and it raises the

question as to why Appellants brought this appeal in the first place.  The resolution

of this issue has no prospective value for any subsequent reviews, because the

antidumping order was revoked as to TPBI after this sixth review.[4]  Given the

trivial amount at stake in this appeal – which is far outweighed by the fees and

costs incurred by the parties to litigate the matter – it appears that Appellants'

---

[3]    $2.2 million x 0.08 percent = $1,760.

[4]    This review encompassed entries during August 2009 – July 2010. (JA884).  The antidumping order was revoked with respect to TPBI effective July 28, 2010.  *See Notice of Implementation of Determination Under Section 129 of the Uruguay Round Agreements Act and Partial Revocation of the Antidumping Duty Order on Polyethylene Retail Carrier Bags From Thailand*, 75 Fed. Reg. 48940 (Dep't of Commerce Aug. 12, 2010).  Accordingly, there was no seventh or subsequent review of TPBI.

purpose for pursuing this appeal is to delay the liquidation of entries and payment of antidumping duties. Such a strategy, however, unfairly imposes unnecessary costs on the other parties to this litigation.

## SUMMARY OF ARGUMENT

The judgment of the Trade Court should be affirmed. Commerce's denial of TPBI's claimed BCR offset to G&A expense is supported by substantial evidence and in accordance with law. Commerce reasonably concluded that the BCR revenues related to export sales rather than COP. Although TPBI might have qualified for a duty drawback adjustment to its reported export prices to account for the BCR revenues, the company never requested such an adjustment and never provided evidence that would have supported such an adjustment.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews Commerce's decisions *de novo*, applying the same standard of review as the Trade Court. Commerce's determinations should be upheld unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1272 (Fed. Cir. 2012). Although the lower court's decision with respect to substantial evidence is reviewed *de novo*, the Court should give "great weight to" the Trade Court's "informed opinion," which should

be "the starting point" of the Court's analysis. *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1253 (Fed. Cir. 2009).

## II. THE DENIAL OF A COST OFFSET FOR "BLUE CORNER REBATES" IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS IN ACCORDANCE WITH LAW

TPBI makes two primary arguments for why the BCR revenues should have been treated as a reduction to COP (in particular, as an offset to the G&A component of COP). First, TPBI argues that it had no obligation to show its entitlement to a duty drawback adjustment with respect to the BCR revenues. According to TPBI, that would have been "impossible," and the only way to capture these revenues in the dumping calculations is to treat them as reductions to COP. *TPBI Br.* at 10-13. Second, TPBI argues that Commerce's practice is to offset G&A by "other income" items such as BCR revenues, and this case represents an unexplained departure from that practice. *Id.* at 13-16. These arguments are meritless and should be rejected.

### A. There Is No Statutory Requirement To Treat BCR Revenues As Cost Reductions

As explained above, BCR revenues represent the return of import duties, conditioned upon exportation of the finished product (*i.e.*, duty drawback). When TPBI purchases resin from domestic suppliers, it pays a "compensation fee" to those suppliers "for the import duties they incur to manufacture the resin." TPBI's Section D Response (Dec. 22, 2010) at D-30 (JA98). According to TPBI, "these

duties will be rebated to TPBI upon export of the finished bags under the blue corner rebates ('BCR') program…" *Id*.

Under the statute, export-contingent refunds of import duties are treated as price adjustments – in particular, as increases to the export price. 19 U.S.C. § 1677a(c)(1)(B) (providing for an increase to export price or constructed export price by "the amount of any import duties imposed by the country of exportation which have been rebated, or which have not been collected, by reason of the exportation of the subject merchandise to the United States"). In this case, however, TPBI did not request such a price adjustment for its BCR revenues.[5] According to TPBI, it would have been futile to do so, because that price adjustment applies, as a matter of law, only when the producer itself is the importer of record and pays the duties directly to the government, not when the duties have been passed through a third-party. *TPBI Br.* at 10-11. But that assertion is unsupported. Nothing in the plain language of the statute requires that the producer, in order to qualify for the price adjustment, have paid import duties

---

[5]     TPBI did request (and provide support for) a duty drawback adjustment for revenues received under a separate program entitled "BIS 19." TPBI's Section D Response (Dec. 22, 2010) at D-30 (JA98); TPBI's Supplemental Section D Response (March 11, 2011) at S1D-53 (JA279). Commerce granted a price adjustment for those revenues pursuant to 19 U.S.C. § 1677a(c)(1)(B). *Polyethylene Retail Carrier Bags from Thailand*, 76 Fed. Reg. 30102, 30104 (Dep't of Commerce May 24, 2011) *("Preliminary Results")* (JA589).

directly to the government (rather than through a third party). 19 U.S.C. §

1677a(c)(1)(B).

TPBI claims that Commerce, in the prior (fifth) review of this order,

interpreted the statute in such a way that a duty drawback adjustment is unavailable

when a third party is involved. *TPBI Br*. at 10-11, citing the *Fifth Review Final*

*Results*. But that is wrong. In the prior review, Commerce explained that

> BCR revenues are import duties imposed by Thailand
> which have been rebated, or which have not been
> collected, by reason of the exportation of the subject
> merchandise. Thus, BCR revenues are analogous to duty-
> drawback revenues with the variant that there are three
> parties involved (the input supplier, the
> producer/exporter, and the foreign government) whereas,
> in a typical duty-drawback situation, there are only two
> parties involved (the producer/exporter and the foreign
> government). Thus, the appropriate adjustment, if one
> were to be made, would be to increase TPBI's U.S. price
> for the import duties rebated.

*Fifth Review Final Results* at Comment 3. Commerce acknowledged that because

the BCR scheme involves an additional party, it is a "variant" of the "typical duty-

drawback situation." But Commerce did not conclude that this precludes treating

the rebates as price adjustments. To the contrary, Commerce concluded that "the

appropriate adjustment, if one were to be made, would be to increase TPBI's U.S.

price for the import duties rebated" pursuant to 19 U.S.C. § 1677a(c)(1)(B). *Id.*

In the *Fifth Review Final Results*, Commerce did not make any adjustment

for TPBI's BCR revenues. This was not because 19 U.S.C. § 1677a(c)(1)(B)

precluded such an adjustment.  Rather, it was because "TPBI has not attempted to demonstrate" the necessary link between the import duties (or "compensation fees") paid and the exports of subject merchandise.  *Fifth Review Final Results* at Comment 3.  In the instant sixth review, TPBI again made no attempt to demonstrate the requisite link.  *Final Results IDM* at 5 (JA893).  "TPBI has not claimed the BCR revenue as a duty drawback adjustment nor has it attempted to demonstrate the link requirement or any other requirement."  *Id.*[6]

TPBI also argues that even if a price adjustment in this situation would not have been precluded by law, it would have been "impossible" as a practical matter to demonstrate the requisite link between the duties paid and the revenues received because of the involvement of a third-party.  *TPBI Br.* at 10-11.  But TPBI fails to explain why that is so, and the company did not even try.  At the very least, TPBI could have provided documentation demonstrating a link between the "compensation fees" it paid to its suppliers and its exports of subject bags incorporating inputs from those suppliers.  If Commerce had then sought additional documentation to link those "compensation fees" to import duties paid by the suppliers to the Thai government, TPBI could have requested the necessary documentation from those suppliers.  TPBI's failure even to attempt to show that

---

[6]      TPBI does not challenge this aspect of the *Final Results*.  That is, TPBI has not appealed Commerce's decision not to make a duty drawback adjustment for the BCR revenues.

the BCR revenues qualify as price adjustments cannot be excused on the grounds of futility.

TPBI could have sought a price adjustment for its BCR revenues under 19 U.S.C. § 1677a(c)(1)(B), but it failed to do so.  Even if TPBI were correct, however, that BCR revenues cannot qualify as a matter of law for such a price adjustment, it would not advance TPBI's case.  TPBI claims that if BCR revenues cannot be treated as additions to price under 19 U.S.C. § 1677a(c)(1)(B), they must be treated as reductions to COP under 19 U.S.C. § 1677b(b)(3).  *TPBI Br.* at 12-13.  But this does not logically follow, and there is no reason why the revenues cannot be excluded from both the price and COP the calculations altogether.  As explained below, Commerce appropriately ignores such revenues in the COP calculations.

### B.  Commerce's Established Practice Is Not To Offset G&A By "Other Income" Related To Export-Conditioned Programs

TPBI argues that "{n}othing in the statute … restricts Commerce from making the claimed BCR adjustment to G&A expense." *TPBI Br.* at 13.  In order to prevail, however, TPBI must show that the statute *requires* such an adjustment.  TPBI makes no attempt to do so, however, and it cites no language within 19 U.S.C. § 1677b(b) that would support such a position.

TPBI argues that COP has previously been calculated exclusive of "tax rebates" refunded upon exportation.  *TPBI Br.* at 13-14, citing *U.S. Steel Group v. United States*, 998 F. Supp. 1151, 1156-57 (Ct. Int'l Trade 1998) ("*U.S. Steel*").

11

*U.S. Steel*, however, was a pre-*URAA* case dealing with a very different situation that has since been addressed by the *URAA* at 19 U.S.C. § 1677b(b)(3). In particular, *U.S. Steel* dealt with a situation where normal value was based on third-country sales (*i.e.*, sales from Argentina to China), and where Argentine VAT-type taxes were rebated upon export to China. *See U.S. Steel Group v. United States*, 973 F. Supp. 1076 1079 (Ct. Int'l Trade 1997), *U.S. Steel*, 998 F. Supp. at 1156. That situation is now addressed by 19 U.S.C. § 1677b(b)(3), which requires that COP be reduced by the amount of any such internal taxes that have been imposed on material purchases and rebated upon export to the third country:

> if the normal value is based on the price of the foreign like product sold for consumption in a country other than the exporting country, the cost of materials shall be determined without regard to any internal tax in the exporting country imposed on such materials or their disposition which are remitted or refunded upon exportation.

19 U.S.C. § 1677b(b)(3).

This statutory provision and the *U.S. Steel* case interpreting the predecessor to this provision are inapplicable here, for two reasons. First, normal value was not based on sales "in a country other than the exporting country"; rather, it was based on TPBI's sales in the home market. *See Preliminary Results*, 76 Fed. Reg. at 30105 (JA590). Second, this provision applies only to an "internal tax" like a VAT, not to import duties. As Commerce explained in a later (post-*URAA*) review

of the same antidumping order involved in *U.S. Steel*, "to receive an adjustment for import duties rebated upon export (*i.e.*, a duty drawback adjustment), different requirements must be met." *Oil Country Tubular Goods from Argentina*, 68 Fed. Reg. 13262 (Dep't of Commerce March 19, 2003) (final results).

Commerce's longstanding practice is not to reduce COP by any revenues received under the BCR and similar export-conditioned programs. *See, e.g., Fifth Review Final Results* at Comment 3 ("the BCR revenues are related to sales (*i.e.*, exports) and not the production of the merchandise under consideration. Thus, it is not appropriate to make an adjustment to TPBI's COP (either the COM or G&A components of COP) for BCR revenues"); *Canned Pineapple Fruit From Thailand*, 68 Fed. Reg. 65247 (Dep't of Commerce Nov. 19, 2003) (final results) at Comment 17 (also disallowing a cost adjustment for the Blue Corner Rebate); *Certain Frozen and Canned Warmwater Shrimp From Brazil*, 69 Fed. Reg. 76910 (Dep't of Commerce Dec. 23, 2004) (final determination) at Comment 12 ("We also disagree with EMPAF's contention that we should account for these export credits by reducing its costs because section 773(b)(3) of the Act provides no basis for such a reduction when the respondent participates in export credit programs such as those presented here"). Here, because the BCR revenues are related to TPBI's export activities rather than its manufacturing activities, Commerce's

refusal to offset COP by such revenues is consistent with its established practice. *Final Results IDM* at 5 (JA893).

TPBI claims that, by denying the offset, Commerce "inflates TPBI's overall cost of production and leads to a distortion of its dumping margin." *TPBI Br*. at 17. But that is wrong. There is no distortion. In the dumping calculations, COP is compared to home market prices. *See TPBI I*, 904 F. Supp. 2d at 1329-1330 n.4 (JA31), citing 19 U.S.C. § 1677b(b)(1). When import duties are not rebated for domestic sales, it "increases home market sales prices," which must be set at a level to recover the full cost of materials – including the import duties. *Id*. (JA32), quoting *Saha Thai Steel Pipe (Public) Co. v. United States*, 635 F.3d 1335, 1338 (Fed. Cir. 2011). An "apples-to-apples" comparison requires, therefore, that COP also reflect the full cost of materials – including import duties. If Commerce had made the adjustment requested by TPBI, it would result in a mismatch whereby home market prices (including import duties) would be compared with COP (excluding import duties). As Judge Pogue explained, "Commerce reasonably concluded that the COP calculation concerns the respondent's home market, whereas export-conditional rebates by definition are not available when the foreign like product is sold domestically. Accordingly, Commerce properly excluded the export-conditional BCR revenue from the COP calculation…" *TPBI I*, 904 F. Supp. 2d at 1330 (JA32-33).

This is entirely unlike the situation in *U.S. Steel*, where third-country sales prices excluding VAT taxes were being compared to a COP including such VAT taxes, resulting in a mismatch. The statute now provides for a reduction to COP for VAT taxes in that very specific circumstance, so that third-country sales prices and COP are stated on an equivalent basis. But the statute provides for no similar adjustment here, and one is not needed to avoid distortion.

The potential "distortion" in this case, if there were any, would occur in the dumping comparisons to the extent that export prices (exclusive of import duties rebated under the BCR) are being compared to home market prices (inclusive of such import duties). But the statutory remedy for any such distortion is a duty drawback adjustment under 19 U.S.C. § 1677a(c)(1)(B) to increase export price. TPBI failed to request such an adjustment or to provide documentation demonstrating its entitlement to such an adjustment, and TPBI does not challenge Commerce's failure to make a duty drawback adjustment for the BCR revenues. TPBI's appeal, therefore, must fail.

## CONCLUSION

For the above reasons, the Trade Court's judgment affirming Commerce's

*Final Results* should be sustained.

Respectfully submitted,

/s/ *Daniel L. Schneiderman*
Joseph W. Dorn
Daniel L. Schneiderman

Counsel for the Polyethylene Retail Carrier
Bag Committee, Hilex Poly Co., LLC, and
Dated: July 1, 2014            Superbag Corporation

**THAI PLASTIC BAGS INDUSTRIES V US,**
**CAFC NO. 2014-1237**


## CERTIFICATE OF SERVICE

This is to certify that I have on this 1st day of July, 2014 caused the foregoing **NON-CONFIDENTIAL VERSION OF BRIEF OF DEFENDANTS-APPELLEES** to be served upon the following parties via the method indicated below:


**VIA CM/ECF:**

Irene H. Chen, Esq.
**Chen Law Group LLC**
200 A Monroe Street
Suite 100
Rockville, MD  20850
Irene@chenlawgroup.com

Ryan M. Majerus, Esq.
**U.S. DEPARTMENT OF JUSTICE**
Commercial Litigation Branch - Civil Division
1100 L Street, NW
Washington, DC 20530
ryan.m.majerus@usdoj.gov


*/s/ Daniel L. Schneiderman*
Daniel L. Schneiderman
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
 (202) 737-0500

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION, TYPEFACE
## REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i). Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this brief includes 3,497 words.

This brief has been prepared in Microsoft Office Word 2010 using a proportionally spaced typeface (14 point Times New Roman font).  In preparing this certificate, the undersigned has relied upon the word count feature of this word-processing system as permitted by Fed. R. App. P. 32(a)(7)(C)(i).

*/s/ Daniel L. Schneiderman*
Joseph W. Dorn
Daniel L. Schneiderman
KING & SPALDING LLP

Counsel for Polyethylene Retail Carrier
Bag Committee, Hilex Poly Co., LLC, and
Superbag Corporation

Dated: July 1, 2014

23239662